FILED
2021 Aug-09  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| MELINDA BERRY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  4:20-cv-00141-HNJ |
| | ) | |
| ANDREW SAUL, | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Melinda Berry seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability and disability insurance benefits.  The court has carefully considered the record, and for the reasons stated below, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00-114.02. *Id.* at §§ 404.1520(d), 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's

impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), 404.1525, 416.925. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant can perform other work, the

evaluator will not find the claimant disabled.   *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).   If the claimant cannot perform other work, the evaluator will find the claimant disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(g), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"   *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.   *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).   "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted).   Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Berry, age 52 at the time of the ALJ hearing, protectively filed an application for a period of disability and disability insurance benefits on March 21, 2017, alleging disability as of February 13, 2017.  (Tr. 108, 192–98).  The Commissioner denied her claims, and Berry timely filed a request for hearing on May 9, 2017.  (Tr. 128).  An Administrative Law Judge ("ALJ") held a hearing on March 11, 2019.  (Tr. 76–107).  The ALJ issued an opinion on April 15, 2019, denying Berry's claim.  (Tr. 51–64).

Applying the five-step sequential process, the ALJ found at step one that Berry did not engage in substantial gainful activity after February 13, 2017, her alleged disability onset date.  (Tr. 56).  At step two, the ALJ found Berry had the severe impairments of malignant neoplasm of breast,[2] disorders of back discogenic and degenerative, and spine disorders.  (*Id.*)  At step three, the ALJ found that Berry's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 57).

Next, the ALJ found that Berry exhibited the residual functional capacity ("RFC") to perform light work, except she could only occasionally climb ramps or

---

[2] Berry received a diagnosis of stage IIA breast cancer on January 9, 2017.  (Tr. 398, 479).  She underwent intravenous chemotherapy during the period February to June 2017, (tr. 791), and a double mastectomy in July 2017.  (Tr. 587–93).  Berry commenced taking an oral hormone-based chemotherapy treatment in June 2017, which, as of her March 2019 hearing, she continued to take. (Tr. 85, 649).

stairs, and she could never climb ladders, ropes, or scaffolds.  She could occasionally balance, stoop, kneel, crouch, or crawl.  In addition, Berry could not sustain concentrated exposure to extreme cold and vibration; unprotected heights; unprotected, moving mechanical parts; or dangerous machinery.  Finally, she must alternate sitting and standing every twenty to thirty minutes throughout the workday to effect a postural change of less than five minutes and without leaving the workstation. (Tr. 58).      At step four, the ALJ determined Berry retained the ability to perform her past relevant work as an administrative clerk.  (Tr. 63).   Alternatively, the ALJ determined a significant number of jobs exited in the national economy which Berry could perform.  (*Id.*)  Thus, the ALJ did not proceed to step five of the sequential analysis.  (Tr. 63–64).  Accordingly, the ALJ determined that Berry has not suffered a disability, as defined by the Social Security Act, since February 13, 2017.  (Tr. 63).

Berry timely requested review of the ALJ's decision.  (Tr. 44–45).  On December 4, 2019, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision.  (Tr. 1–3).  On January 30, 2020, Berry filed her complaint with the court seeking review of the ALJ's decision.  (Doc. 1).

## ANALYSIS

Berry contends the ALJ's decision does not rest upon substantial evidence because the ALJ improperly discredited her subjective complaints of pain and fatigue and, in turn, misapplied the pain standard.  Contrary to Berry's contention, however, the court finds substantial evidence demonstrates the ALJ properly applied the pain

6

standard and relied upon objective medical evidence to discredit her allegations of pain

and fatigue.

> To establish disability based on testimony of pain and other symptoms,
> the claimant must satisfy two parts of a three-part test by showing: "(1)
> evidence of an underlying medical condition; and (2) either (a) objective
> medical evidence confirming the severity of the alleged pain; or (b) that
> the objectively determined medical condition can reasonably be expected
> to give rise to the claimed pain."

*Zuba-Ingram v. Comm'r of Soc. Sec.*, 600 F. App'x 650, 656 (11th Cir. 2015) (quoting *Wilson*

*v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)).  A claimant's testimony

coupled with evidence that meets this standard suffice "to support a finding of

disability."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, eliminates the

use of the term "credibility" as it relates to assessing the claimant's complaints of pain

and clarifies that the ALJ "will consider any personal observations of the individual in

terms of how consistent those observations are with the individual's statements about

his or her symptoms as well as with all of the evidence in the file."  SSR 16-3p, 2016

WL 1119029, *7 (Mar. 16, 2016).  An ALJ rendering findings regarding a claimant's

subjective symptoms may consider a variety of factors, including: the claimant's daily

activities; symptom location, duration, frequency, and intensity; precipitating and

aggravating factors; type, dosage, effectiveness, and side effects of medication taken to

alleviate the symptoms; and other factors concerning functional limitations and

restrictions due to symptoms.  *See* 20 C.F.R. §§ 404.1529(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." 2016 WL 1119020 at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Berry testified during the administrative hearing that she resigned her previous job upon receiving her cancer diagnosis, (tr. 84), and she experiences pain in her back and diabetic neuropathy in her legs. (Tr. 86). During the year preceding the hearing, Berry received steroid injections every three months for her back pain, though she discontinued the injections because they did not relieve her pain. (Tr. 88). She takes prescription medication for her pain, which "kind of helps," in addition to over-the-the counter pain medications. (Tr. 88–89). In addition, Berry treated her pain with heat therapy and participated in physical therapy for a period, which did not "seem to ease [her pain] any." (Tr. 89). Berry testified "it really hurts" when she transitions from sitting to standing. (*Id.*) She scored her average daily pain level at 7.5 to 8/10, and testified medication reduces her pain "[j]ust a little bit." (Tr. 90). Berry did not experience side effects from her medications. (Tr. 91). Berry further testified the neuropathy in her legs manifests as a tingling and burning sensation in her feet. (*Id.*) She stated that diabetic socks do not provide any relief, and she can barely tolerate the

covers touching her feet at night.[3]  (Tr. 92).

In addition, Berry testified one of her physicians advised her to "be careful," and refrain from "lifting and stuff."  (*Id.*)  Berry estimated she could lift and carry approximately fifteen to twenty pounds, though she had not attempted to do so.  (Tr. 93).  She also stated she could walk to the back of a Walmart, at which point she would experience back pain, and tingling and numbness in her legs.  (*Id.*)  Berry could extend her arms forward and above her head, and pick up coins from a table.  (*Id.*)  She could not kneel or stoop to put on shoes or tie shoelaces, though she could sit down and "flip [her] leg up sideways" to do so.  (Tr. 93–94).

Berry testified that "[m]ost days" she could rise, bathe, dress, and tend to her personal hygiene.  (Tr. 94).  She also prepares meals when her spouse does not bring home prepared meals, and she loads the washing machine.  (*Id.*)  Further, Berry grocery shops with her spouse and attends church.  (Tr. 94–95).  She elaborated that the last time she volunteered to serve a meal at her church, she experienced pain that brought her to tears and caused her to take pain pills.  (Tr. 95).  Berry spends her days watching television and reading.  (Tr. 96).  Berry experiences fatigue and forgetfulness based upon her chemotherapy treatment, and she may fall asleep reading two or three times a day.[4]

---

[3] Berry stated some days she feels like she "would like to have new legs" due to the severity of her pain and tingling.  (Tr. 244).

[4] Berry explained that chemotherapy "changed [her] life," as it rendered her "sick" and tired" such that she did not "feel like doing anything most days."  (Tr. 244).

(Tr. 98–99).

In her April 2017 Function Report, Berry stated her spouse puts on her socks and shoes, and she experiences fatigue and shortness of breath after bathing. (Tr. 238). Berry indicated she prepares simple meals for breakfast and lunch, and she and her spouse prepare dinner together. (Tr. 239). She stated she prepares simple meals roughly three times weekly, which fatigues her. (*Id.*). Berry loads the washing machine once a week, and places silverware and glasses in the dishwasher as she uses them. (*Id.*) She stated her spouse loads larger items in the dishwasher, as bending causes her pain. (*Id.*) Berry leaves the house to attend appointments and shop, and, depending upon her sugar levels and back pain, she drives "sometimes" but "not often." (Tr. 240). She shops once every three weeks for roughly one-and-a-half hours, as she has to stop and rest. (*Id.*) Berry can pay bills,[5] count change, handle a savings account, and use a checkbook. (*Id.*) In addition, Berry's hobbies include reading, watching television, participating in her son's racing activities, swimming, and traveling; however, a diminished ability to focus, a weakened immune system, and fatigue interfere with her ability to engage in her hobbies. (Tr. 241).

Further, Berry reported her impairments affected her ability to lift, squat, bend,

---

[5] On her Function Report, Berry checked both the "Yes" and "No" boxes in response to the question, "Are you able to . . . [p]ay bills." (Tr. 240). In the section explaining her "No" answer, Berry stated she "pay[s] bill by phone when [she is] able." (*Id.*) Further, Berry checked both the "Yes" and "No" boxes in responding to the question whether her "ability to handle money [had] changed since" the onset of her impairments. (Tr. 241). Berry elaborated that chemotherapy "effected [her] train of thought [and] memory on bad days." (*Id.*)

stand, reach, walk, kneel, climb stairs, see, remember, complete tasks, concentrate, understand, and follow instructions.   (Tr. 242).   Berry elaborated she can lift approximately ten pounds, and she cannot walk "far at all" without experiencing shortness of breath.   (*Id.*)   She stated she can resume walking after five to ten minutes of rest.   (*Id.*)   In addition, Berry indicated she would require assistance raising herself from a bending, squatting, or kneeling position; she can barely climb stairs; and she experiences shortness of breath while performing tasks.   (*Id.*)   She also experiences forgetfulness and poor concentration, and cannot follow oral or written instructions without repetition.   (*Id.*)   Berry holds her spouse's arm "every time [she] walk[s] anywhere," including when stepping onto sidewalks, climbing stairs, and when she feels unsteady.  (Tr. 243).

In his opinion, the ALJ summarized Berry's hearing testimony and Function Report regarding her pain.  (Tr. 58–59).  The ALJ satisfied the Eleventh Circuit pain standard by stating that Berry's medically determinable impairments could reasonably be expected to produce some of the symptoms she alleged, but Berry's statements concerning the intensity, persistence, and limiting effects of her symptoms did not accord with the medical evidence of record and other evidence.  (Tr. 59).  The ALJ detailed Berry's medical evidence from the period 2016 to 2019[6] to support his decision,

---

[6] The record also contains medical evidence depicting Berry's 2014 treatment for "chronic venous disease," (tr. 297), and her routine general care with Family Medicine of Sardis, P.C. during the period 2014 to 2015.  (Tr. 349–75).  Berry does not raise any issues involving these records; thus, the court will  not discuss the same.

highlighting records indicating that Berry routinely exhibited normal motor strength in her upper and lower extremities, and her physical examinations consistently manifested unremarkable results. (Tr. 59–62). The ALJ adequately articulated his findings and supported them with substantial evidence.

As an initial matter, Berry's treatment records during the year preceding her February 2017 alleged onset date portray largely unremarkable findings vis-à-vis her pain symptoms. Berry underwent imaging of her spine in February and March 2016. (Tr. 322, 323). Her thoracic spine depicted "mild diffuse degenerative changes . . . with small anterior marginal osteophytes at several levels"; however, the imaging revealed no acute abnormalities. (Tr. 323). Berry's lumbar spine portrayed severe narrowing of the L5/S1 disc space, though her other disc spaces manifested no abnormalities and the imaging did not reveal evidence of disc herniation or spinal stenosis. (Tr. 323).

The record portrays Berry established care with Dr. Brian M. Scholl in April 2016. She presented with complaints of "terrible[,] [radiating] low back pain" ongoing "for an extended period of time." (Tr. 314). Based upon the results of her recent spine imagining, Dr. Scholl diagnosed Berry with isthmic spondylolisthesis at L5-S1. (Tr. 307, 315). Upon examination, Berry displayed difficulty and "significant pain" vis-à-vis her "flexion and extension." (*Id.*) In addition, she manifested pain upon performing a straight leg raise test. (*Id.*) However, Berry exhibited full motor strength, and normal gait, station, and coordination. (*Id.*) Dr. Scholl prescribed Berry various pain medications, and recommended she attend physical therapy and maintain an exercise

routine.  (Tr. 315–16).

Berry attended eleven physical therapy sessions during the period April to May 2016 to treat her lower back pain, where she reported fluctuating pain levels.  (Tr. 441–64).  Berry scored her pain level at 8/10 at her first session, (tr. 456), 6/10 at her second session, (tr. 458), 5/10 at her third and fourth sessions, (tr. 459, 461), and 0/10 at her fifth session.  (Tr. 463).  She scored her pain level at 1/10 at her sixth session, (tr. 444), 7/10 at her seventh session – which she attributed to "riding a lawnmower for 3 hours [the previous] Saturday" – (tr. 446), and 6/10 at her eighth, ninth, tenth, and eleventh sessions.  (Tr. 448, 450, 452, 454).

Berry returned to Dr. Scholl in May 2016 after completing physical therapy, where she reported the therapy "really [did] not provide any relief at all."  (Tr. 311).  Upon examination, Berry exhibited full motor strength, and normal gait, station, and coordination.  (Id.)  Dr. Scholl prescribed Berry epidural steroid injections, (*id.*), and when Berry returned for a follow-up visit in June 2016, Dr. Scholl noted Berry "ha[d] done quite well status post epidurals."  (Tr. 308).  The record portrays Berry did not seek treatment with Dr. Scholl again until June 2017.  (Tr. 526–30).

At her June 2017 appointment with Dr. Scholl, Berry presented with complaints of swelling in her legs and feet, joint and muscle pain, weakness, cramps, numbness, and tingling.  (Tr. 526).  Upon examination, however, Berry exhibited full motor strength, and normal gait, station, and coordination.  (Tr. 527).  Dr. Scholl noted he would correspond with Berry's oncologist and ascertain the appropriate time to

recommence her epidural steroid injections, as they "helped her tremendously." (Tr. 327). In addition, Dr. Scholl advised Berry to maintain an exercise routine. (Tr. 529).

Berry returned for a follow-up appointment with Dr. Scholl in August 2018, where she reported that though her prior epidural steroid injections "helped quite a bit," the most recent injection did not improve her pain. (Tr. 900). Dr. Scholl administered Berry another injection and again advised her to maintain an exercise routine. (Tr. 905–06). The record does not portray Berry sought treatment with Dr. Scholl again during the pertinent period.

The balance of Berry's relevant medical records, which pertain to the period 2017 to 2019, depict her cancer treatment, (tr. 398–442, 479–513, 533–707, 715–67, 779–842, 875–79, 833–94), neuropathy treatment, (tr. 708–14, 880–82), and routine general care with Family Medicine of Sardis, P.C. (Tr. 843–74, 895–98). Significantly, these records portray Berry routinely denied pain and manifested largely unremarkable findings in her legs, joints, and back. Although Berry variously complained of leg, joint, and back pain during the period 2017 to 2019, (tr. 505, 509, 522, 549, 519, 661, 669, 675, 708, 750, 752, 818, 820, 829, 838, 884, 897), the medical evidence portrays she also regularly denied pain during the same. (Tr. 401, 405, 419, 422, 480, 485, 487, 491, 499, 506, 550, 569, 644, 650, 653, 658, 666, 683, 688, 690, 692, 701, 745, 782, 786, 813, 827, 844).

Similarly, physical examination notes from the period 2017 to 2019 depict Berry consistently exhibited a normal gait, and normal strength with no abnormalities in her

14

lower extremities. (Tr. 311, 314, 380, 420, 481, 506, 527, 570, 644, 650, 651, 653, 658, 661, 666, 669, 675, 702, 711, 745, 779, 782, 786, 791, 813, 818, 820, 829, 881, 898). Likewise, Berry consistently manifested normal motor strength and range of motion in her extremities, (tr. 311, 312, 314, 527, 705, 711, 752, 782, 829, 880–82, 898), and did not display joint effusions during the pertinent period. (Tr. 398, 401, 405, 423, 485, 487, 491, 499, 644, 653, 658, 661, 666, 669, 675, 668, 683, 688, 690, 692, 705, 745, 779). Further, Berry routinely displayed no tenderness in her spine upon examination. (Tr. 398, 401, 405, 423, 491, 499, 506, 550, 644, 653, 658, 661, 669, 675, 668, 683, 688, 690, 692, 705, 745, 779, 818, 820, 827). In addition, August 2018 imaging of Berry's lumbar spine revealed degeneration; however, it nonetheless depicted "no significant progression or new abnormalities" as compared to her March 2016 imaging. (Tr. 909).

The record portrays similar inconsistencies vis-à-vis Berry's fatigue. Although Berry complained of severe fatigue during the period 2017 to 2019, (tr. 644, 650, 653, 658, 669, 675, 745, 750, 752, 779, 786, 813, 818, 820), she also often reported only moderate or mild fatigue, (tr. 419, 422, 480, 485, 499, 666, 791, 829, 838), and routinely denied experiencing fatigue altogether. (Tr. 401, 405, 487, 491, 505, 509, 535, 549, 585, 596, 640, 773, 782, 797, 801, 806, 811, 845, 850, 854). Relatedly, as referenced previously, Berry frequently denied muscle weakness or failed to display the same upon examination. (Tr. 419, 420, 422, 481, 650, 651, 702, 704, 750, 752, 782, 791, 813, 818, 820, 898). Based upon the foregoing review, the record contains substantial evidence buttressing the ALJ's evaluation of Berry's testimony regarding her pain and fatigue.

15

The ALJ also properly evaluated Dr. Victoria L. Hogan's April 2017 Residual Functional Capacity Assessment.  (Tr. 115–17).  Dr. Hogan opined that Berry retained the residual functional capacity for light work; however, she could only occasionally balance, stop, kneel, crouch, crawl, and climb ramps or stairs.  (Tr. 115).  Further, she could never climb ladders, ropes, or scaffolds, and she should avoid all concentrated exposure to machinery, and extreme cold and vibration.  (Tr. 116).  In addition, she could occasionally lift and/or carry twenty pounds, and frequently lift and/or carry ten pounds.  (Tr. 115).  She could also stand, sit, and walk for six hours of an eight-hour workday.  (*Id.*)

The ALJ assigned Dr. Hogan's opinion only partial weight, as he determined Berry should also avoid all exposure to unprotected heights and moving mechanical parts, (tr. 58), and concluded the opinion accorded with the evidence depicting Berry's "normal gait, station, and coordination."  (Tr. 62).  Accordingly, the ALJ accounted for Dr. Hogan's opinion in his residual functional capacity assessment to the extent it accorded with his own conclusions vis-à-vis Berry's limitations.  Dr. Hogan's opinion thus constitutes substantial evidence supporting the ALJ's residual functional capacity determination.

In short, the ALJ offered adequate explanations for discounting Berry's testimony as to her pain and other symptoms.  Further, the ALJ properly cited objective medical evidence refuting the severity of the alleged symptoms, and Berry has not offered any argument or pointed to any facts undermining the substantial evidence

supporting the ALJ's residual functional capacity assessment.  Although Berry maintains her pain and fatigue limit her to a greater degree than the ALJ assessed, the court cannot reweigh the evidence or second-guess the ALJ's conclusions.  *See Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).  Thus, the ALJ did not err in assessing Berry's credibility.

Berry contends the ALJ accurately summarized her medical records but accorded them "selective treatment" by "overlook[ing] or mischaracterize[ing] portions of the record that are consistent with [her] testimony."  (Doc. 16 at 6).  The court disagrees.  First, Berry's contention the ALJ accurately summarized her medical records contradicts her contention he mischaracterized "portions" of the same; if the ALJ mischaracterized the evidence, then his summation could not stand as accurate.  (*Id.*)  In any event, a review of the specific records the ALJ highlighted reveals no inconsistencies with his discussion thereof.  *Compare* tr. 59–62, *with* tr. 307, 316, 398–99, 401–02, 405, 526–27, 531, 644–45, 708–12, 769–74, 791, 818–21, 880, 884–85, 889–94, 897–98, 900–06).

Further, the ALJ did not improperly disregard evidence buttressing Berry's testimony, as he noted Berry's "history of isthmic spondylolisthesis," (tr. 59); her various complaints of leg, joint and muscle pain, weakness, cramps, numbness, and tingling, (tr. 60–62); her complaints that epidural steroid injections did not relieve her back pain, (tr. 61-62); and various occasions where she complained of severe or persistent fatigue.  (Tr. 61).  Contrary to Berry's contention, therefore, the ALJ did not

"pick and choose among [the records] to support his own conclusion." (Doc. 16 at 6) (quoting *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009)); *see Brito v. Comm'r, Soc. Sec. Admin.*, 687 F. App'x 801, 804 (11th Cir. 2017) ("Although [the claimant] points to other evidence in the record that was consistent with her hearing testimony and to which the ALJ did not specifically refer in making her credibility determination, the ALJ was not required to examine or reference every piece of evidence, so long as it is evident, as it is here, that the ALJ considered [her] medical condition as a whole.").

Berry similarly contends the ALJ "failed to articulate with specificity" the evidence he relied upon in discrediting her testimony, and failed to consider her "longitudinal treatment history." (*Id.* at 6–7). These arguments do not withstand review. As referenced previously, the ALJ chronicled Berry's medical evidence from the period 2016 to 2019, and detailed specific records depicting the status of her leg and back pain, and treatment for her various impairments. (Tr. 59–62). The ALJ's discussion included particular reference to various records depicting largely unremarkable examinations of Berry's legs and spine. (*Id.*) As reviewed herein, substantial evidence in the record supports the ALJ's findings; the medical evidence indicates the presence of the impairments determined by the ALJ, yet they also indicate stable findings pertinent to the credibility assessment. Moreover, the ALJ commenced his discussion by noting he "considered the entire medical record even where not

explicitly discussed."[7]   (Tr. 59).   Therefore, the ALJ properly articulated the medical

evidence he relied upon in assessing Berry's testimony and heeded her longitudinal

treatment history.[8]   *See Newberry v. Comm'r*, 572 F. App'x 671, 672 (11th Cir. 2014) (The

ALJ's adverse credibility determination, while "terse," rested upon substantial evidence

because he "considered [the claimant's] activities of daily living, the frequency of her

symptoms, the types and effects of her medications, and her overall treatment history,"

and, therewith, "considered [the claimant's] condition as a whole.").

Finally, Berry faults the ALJ's characterization of her daily living activities in

rendering his adverse credibility determination.   (Doc. 16 at 11).   According to Berry,

the ALJ improperly described her daily living activities without acknowledging the

corresponding limitations she articulated in her Function Report.   The pertinent portion

---

[7] As Berry correctly notes, the ALJ bears no duty to "specifically refer to every piece of evidence in his decision, as long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude the ALJ considered [the claimant's] medical condition as a whole." (Doc. 16 at 6) (alterations in original) (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)). Based upon the ALJ's detailed discussion of Berry's medical evidence, the court can clearly discern that he considered the totality of her symptoms and impairments.

[8] Berry thus mischaracterizes the ALJ's decision by suggesting his assessment of Dr. Hogan's opinion constitutes the sole explanation for his credibility and RFC determination. *See* Doc. 16 at 6 ("The ALJ failed to articulate with specificity as to the evidence upon which he relied upon when making his determination. However, he did indicate that he gave [Dr. Hogan's] opinion partial weight."). Further, Berry fails to demonstrate the ALJ erred by referencing her normal gait, station, and coordination in weighing Hogan's opinion. According to Berry, "these 'normal' examinations do not provide substantial evidence to support the ALJ's determination and demonstrate the ALJ's failure to properly consider the record as a whole." (*Id.*) As elaborated in the foregoing discussion, however, the ALJ engaged in a detailed discussion of Berry's medical records depicting not only her normal gait, station, and coordination, but also the largely unremarkable physical examinations of her legs and spine. (Tr. 59–62). The ALJ thus did not improperly rely upon "isolated examinations" of Berry's gait, station, and coordination to conclude she did not manifest disabling pain and fatigue. (Doc. 16 at 7).

of the ALJ's opinion reads:  "[Berry] stated that she could prepare meals and perform personal care, take medications without reminders, perform some household chores, drive, shop, pay bills, manage funds, and attend church."  (Tr. 62) (internal citations omitted).  Relying upon *Horton v. Barnhart*, 469 F. Supp. 2d 1041 (N.D. Ala. 2006), Berry contends the ALJ improperly failed to observe the limitations she described vis-à-vis her ability to prepare meals, perform personal care, perform household chores, and pay bills.  Although the ALJ did not recite certain limitations Berry highlights, such omissions do not undermine the substantial evidence buttressing his decision.

The ALJ may consider the claimant's daily activities as one factor in evaluating subjective complaints.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, that does not mean it is improper for the ALJ to consider a claimant's daily activities at all."); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 880 (11th Cir. 2009) (the claimant's daily activities of managing her personal care, preparing meals, shopping, caring for pets, watching television, using a computer, and socializing with others supported ALJ's credibility determination).

In *Horton*, the court opined the ALJ erred by selectively and disingenuously describing the claimant's daily living activities in rendering his adverse credibility determination, "as he accept[ed] her listing of her activities, but not her limiting description of them."  *Horton*, 469 F. Supp. 2d at 1047.  More specifically, the ALJ noted

the claimant could drive a car and perform household chores; however, he omitted reference to the claimant's qualification that she could not drive far distances, and she performed chores "infrequently and sporadically, taking much longer to complete." *Id.* at n.2. The court thus concluded substantial evidence failed to support the ALJ's justifications for discrediting the claimant's testimony. *Id.* at 1047.

Significantly, however, apart from his "disingenuous" description of the claimant's daily living activities, the only other evidence the ALJ latched upon to support his adverse credibility determination constituted a physician's opinion – which the court concluded the ALJ improperly rejected. *Id.* at 1045–47. Thus, the ALJ erroneously evaluated the claimant's subjective complaints in *Horton* because "the ALJ relied entirely on the [claimant's] daily activities in rejecting her pain testimony and allegations of debilitating pain, after improperly rejecting the opinion of the plaintiff's physician." *Hart v. Soc. Sec. Admin.*, No. 5:19-cv-00811-SGC, 2021 U.S. Dist. LEXIS 48032, at *17–18 (N.D. Ala. Mar. 15, 2021) (discussing the narrow context of the court's reasoning in *Horton*).

The court does not confront the same deficiencies in the case at bar, for, as elaborated previously, the ALJ properly detailed medical records evincing substantial evidence supporting his determination that Berry's pain and fatigue do not preclude employment. *Hunter v. Colvin*, No. 4:13-CV-0391-SLB, 2014 U.S. Dist. LEXIS 124866, at *22–28 (N.D. Ala. Sept. 8, 2014) (contrary to the ALJ's conclusion, the claimant's daily living activities did not undermine her subjective complaints; however, substantial

evidence nevertheless buttressed the ALJ's decision because he also relied upon sufficient objective medical evidence to render his adverse credibility determination). Accordingly, the ALJ's decision in the instant case does not manifest the concerns at issue in *Horton*.

Furthermore, based upon the statements in Berry's Function Report and hearing testimony, the ALJ's description of her daily living activities manifests as neither selective nor disingenuous.

As for her ability to prepare meals, Berry contends the ALJ failed to observe her Function Report testimony that she "only . . . cook[s] eggs for breakfast"; she prepares "a sandwich for lunch"; her spouse "helps her with dinner"; and "preparing meals wears her out." (Doc. 16 at 11). To be sure, the ALJ cited Berry's Function Report when noting her ability to prepare meals, and he did not identify the foregoing limitations. (Doc. 62). However, as referenced previously, the ALJ also discussed Berry's hearing testimony at the outset of his RFC assessment, including her described ability to prepare meals. (Tr. 58). And, unlike in her Function Report, Berry testified during the hearing that she prepares meals when her spouse does not bring home prepared meals. (Tr. 94). Berry thus did not describe the meal preparation limitations she articulated in her Function Report, and, concomitantly, the ALJ's reference to her ability to prepare meals does not manifest as "disingenuous." *Horton*, 469 F. Supp. 2d at 1047.

That is, because the ALJ accurately summarized Berry's subsequent hearing testimony in his decision, his invocation of her Function Report does not mar the

propriety of his decision, notwithstanding his omission of the more circumscribed meal preparation abilities Berry described in her Function Report. *See Eckert v. Comm'r of Soc. Sec.*, 152 F. App'x 784, 791 (11th Cir. 2005) (The ALJ did not mischaracterize the evidence or improperly discredit the claimant's subjective complaints of pain by noting the claimant reported the ability to drive a car 180 miles, but omitting the claimant's statement that such a drive takes six hours and requires him to "stop at every rest stop," because substantial evidence nevertheless supported the adverse credibility determination); *Byars v. Colvin*, No. 6:15-CV-00303-KOB, 2016 U.S. Dist. LEXIS 102203, at *33–35 (N.D. Ala. Aug. 4, 2016) (in discussing the claimant's pain allegations, the ALJ did not improperly omit the claimant's testimony regarding specific limitations on her daily living activities because her Function Report contradicted her testimony); *O'Neil ex rel. O'Neil v. Astrue*, No. 8:07-CV-1074-T-17EAJ, 2008 U.S. Dist. LEXIS 35491, at *8 (M.D. Fla. Apr. 30, 2008) (the claimant failed to demonstrate the ALJ's alleged mischaracterizations of her daily living activities rendered his decision improper because she did not demonstrate any prejudice flowing from the same); *c.f. Iheanacho v. Berryhill*, No. 6:17-cv-0910-MHH, 2018 U.S. Dist. LEXIS 168630, at *24–25 (N.D. Ala. Sept. 28, 2018) (The ALJ misleadingly stated the claimant could "manage her personal care" because the claimant reported "preparing simple meals [took] her 'all day,'" and, likewise, she testified at the hearing that she typically did not cook and prepared frozen meals to avoid prolonged standing.).

The ALJ did not mischaracterize Berry's personal care abilities for the same

reason.  Berry maintains the ALJ improperly failed to acknowledge the statements on her Function Report that her spouse puts on her shoes and socks, and "bathing wears her out and causes shortness of breath." (Doc. 16 at 11).  Although the ALJ cited to Berry's Function Report without recounting these limitations when he noted her ability to "perform personal care," (tr. 62), he also commenced his RFC assessment by highlighting Berry's hearing testimony that she "takes care of her own personal hygiene." (Tr. 59).  To revisit, Berry testified during the hearing that "[m]ost days" she can rise, bathe, dress, and care for her personal hygiene.  (Tr. 94).  Further, Berry testified she can put on shoes and tie shoelaces by sitting down and "flip[ping] [her] leg up sideways."  (Tr. 93–94).  Thus, as with her testimony regarding her meal preparation abilities, Berry did not catalogue during the hearing the personal care limitations that she articulated in her Function Report.  The ALJ, in turn, did not rely upon a misstatement of her personal care abilities to discredit her subjective complaints of pain and fatigue when he noted she retained the ability to "perform personal care." *See Byars*, 2016 U.S. Dist. LEXIS 102203, at *33–35; *O'Neil ex rel. O'Neil v. Astrue*, 2008 U.S. Dist. LEXIS 35491, at *8.

Similarly, the ALJ appropriately described Berry's ability to perform household chores.  Berry emphasizes she stated in her Function Report that her household chores consist of loading clothes in the washing machine once weekly and placing silverware

in the dishwasher, which activities cause fatigue.[9]  (Doc. 16 at 11).  The ALJ cited Berry's Function Report for the proposition she can "perform some household chores," and, as Berry notes, he did not specify the foregoing limitations.    Nonetheless, in summarizing Berry's hearing testimony, the ALJ noted Berry testified she "puts laundry in the washer, and puts dishes in the dishwasher" – which accords with the statements in her Function Report.  (Tr. 59).  To be sure, the ALJ did not specify that Berry loads the washing machine once weekly; that the dishes she places in the dishwasher comprise silverware and glasses; and that these activities fatigue her.  But these omissions do not render disingenuous the ALJ's description of Berry's ability to perform household chores; rather, the ALJ simply recounted her hearing testimony and summarized that she retains the capacity for "*some* household chores."  (Tr. 62) (emphasis added).  Berry thus fails to demonstrate that the ALJ's characterization of her ability to perform household chores renders his decision improper.  *See O'Neil ex rel. O'Neil v. Astrue*, 2008 U.S. Dist. LEXIS 35491, at *8 ("The mere fact that the ALJ declined to quote [the claimant's testimony] directly [did] not render her opinion deficient," as the ALJ reasonably paraphrased the claimant's statements regarding her daily living activities.); *c.f. Kinsley v. Berryhill*, No. 3:17-cv-01218-MHH, 2018 U.S. Dist. LEXIS 156711, at *22 (N.D. Ala. Sept. 14, 2018) (Substantial evidence did not support the ALJ's adverse credibility determination in part because the "manner in which the ALJ described [the

---

[9] Berry also stated in her Function Report that she places drinking glasses in the dishwasher.  (Tr. 239).

claimant's] activities [bore]  little resemblance to [her] own description.");

Finally, the ALJ did not disingenuously describe Berry's ability to pay bills.  To revisit, on her Function Report, Berry checked both the "Yes" and "No" boxes in response to the question, "Are you able to . . . [p]ay bills."  (Tr. 240).  In the section explaining her "No" answer, Berry stated she "pay[s] bill by phone when [she is] able." (*Id.*)  Further, Berry checked both the "Yes" and "No" boxes in responding to the question whether her "ability to handle money [had] changed since" the onset of her impairments.  (Tr. 241).  Berry elaborated that chemotherapy "effected [her] train of thought [and] memory on bad days."  (*Id.*)  Reading the foregoing responses together, the court cannot discern whether Berry indicated she pays bills only when she can do so via phone (*i.e.*, only when telephonic payment constitutes a viable payment option); she pays bills via phone but sometimes lacks the ability to do so (*i.e.*, her impairments hinder her ability to pay bills telephonically); and/or her chemotherapy occasioned concentration and memory deficits that interfered with her ability to pay bills (whether telephonically or otherwise).

Implicit in any of the foregoing interpretations, however, reasonably lies the representation that Berry retains the ability to pay bills, even though she did so only telephonically and the ill effects of chemotherapy interfered with such ability "on bad days."  (*Id.*)  Thus, the ALJ's observation that Berry can "pay bills" does not constitute a misstatement or depict disingenuousness.  Concomitantly, the ALJ's reliance upon Berry's reported ability to pay bills does not undermine the substantial evidence

buttressing his decision.  *See Eckert*, 152 F. App'x at 791.

In summary, Berry fails to establish the ALJ's discussion of her daily living activities renders improper his assessment of her subjective complaints of pain and fatigue.  Although the ALJ did not recite each limitation Berry included in her Function Report, he accurately summarized the relevant portions of her subsequent hearing testimony and fairly represented the pertinent statements in her Function Report.

Furthermore, as the Commissioner highlights, the evidence regarding Berry's daily living activities did not constitute the sole justification for the ALJ's adverse credibility determination.   As elaborated previously, the ALJ buttressed his determination with a detailed discussion of medical evidence undermining the conclusion Berry sustains disabling pain and fatigue.  Accordingly, the ALJ's decision rests upon substantial evidence.  *See Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 832 (11th Cir. 2013) (the claimant's daily living activities, coupled with her medical evidence, supported the ALJ's adverse credibility determination); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (the ALJ properly considered the claimant's daily living activities as one factor in assessing the claimant's subjective complaints of pain); *Hart*, 2021 U.S. Dist. LEXIS 48032, at *18 (Although the ALJ did not delineate the specific limitations associated with the claimant's reported daily living activities, he nevertheless properly assessed her credibility because his reference to her daily living activities "was preceded by a lengthy discussion on how the objective medical evidence and treatment notes" belied her allegations of disabling pain.); *Eubanks v. Berryhill*, No. 5:16-CV-1487-

VEH, 2017 U.S. Dist. LEXIS 185865, at *9 (N.D. Ala. Nov. 9, 2017 (substantial evidence supported the ALJ's credibility assessment because he properly considered the claimant's daily living activities together with the objective medical evidence); *Davis-Baker v. Colvin*, No. 1:14-cv-1854-AKK, 2015 U.S. Dist. LEXIS 80395, at *8–10 (N.D. Ala. June 22, 2015) (substantial evidence buttressed the ALJ's adverse credibility determination because the ALJ did not mischaracterize the evidence vis-à-vis the claimant's daily living activities, nor did he improperly rely solely upon the claimant's daily living activities to assess her credibility as he analyzed the objective medical evidence).

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

**DONE** this 9th day of August, 2021.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE